FILED

2025 Sep-05  PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| NOVEL HODGE, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.:  2:24-CV-00642-RDP** |
| | } | |
| FRANK BISIGNANO, COMMISSIONER | } | |
| OF SOCIAL SECURITY[1], | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

Plaintiff Novel Hodge brings this action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits, and supplemental security income. *See* 42 U.S.C. §§ 405(g) and 1383(c). After careful review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

Plaintiff completed applications for disability and disability insurance benefits ("DIB") on June 20, 2019, and Supplemental Security Income ("SSI") on July 10, 2019. (Tr. 235-53). The applications were originally denied by the Social Security Administration ("SSA") on October 22, 2019, and again upon reconsideration on March 11, 2020. (Tr. 91, 103, 175, 178). After a hearing was held on August 20, 2020 (Tr. 29-55), Administrative Law Judge Clarence Guthrie ("ALJ") issued a September 10, 2020 decision finding that Plaintiff was not disabled. (Tr. 56-69). On January 4, 2021, the Appeals council denied Plaintiff's request for reconsideration, making the

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes Commissioner Bisignano as the defendant in the action. *See* Fed R. Civ. P. 25(d) (Although the public officer's "successor is automatically substituted as a party when the predecessor no longer holds office, the "court may order substitution at any time….").

ALJ's decision the final decision of the Commissioner. (Tr. 1). Plaintiff then appealed to the district court in *Hodge v. Social Security Administration*, *Commissioner*, Case No. 2:21-cv-00324-MHH.

Before the court could render a decision, the Commissioner moved to voluntarily remand the case and the court granted the motion. (Tr. 790-91). On August 24, 2022, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ. (Tr. 794). The Appeals Council ordered the ALJ to "[f]urther evaluate whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments as outlined in 20 CFR Part 404, Subpart P, Appendix 1" and "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (Tr. 795).

The ALJ held a second hearing on February 7, 2023. (Tr. 706-54). In his second decision, dated May 5, 2023, the ALJ determined that Plaintiff became disabled on May 1, 2023 pursuant to the guidelines of Medical-Vocational Rule 201-14.[2] However, the ALJ found that Plaintiff had not been 'disabled' within the meaning of the Social Security Act between July 24, 2018 (the alleged onset date) through December 31, 2019 (the last date insured). (Tr. 682-705). After the Appeals Council denied Plaintiff's request for review of the ALJ's second decision (Tr. 668), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the February 7, 2023 hearing before the ALJ, Plaintiff testified that he was a forty-nine year old man and held a GED. (Tr. 716, 718). Plaintiff last worked in 2013 as an iron worker. (Tr. 718). Plaintiff alleged that he suffers from obesity, cervical and lumbar degenerative disc disease,

---

[2] Medical-Vocational Guideline 201.14 provides that an individual shall be found disabled if the claimant meets these criteria: (1) he is closely approaching advanced age (2) he has at least a high school education (3) his prior work was skilled or semi-skilled and (4) he does not have transferable skills. 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

degenerative joint disease in the left hip, peripheral arterial occlusive disease, high blood pressure, and hyperlipidemia. (Tr. 718-19). Plaintiff complained of daily neck, hip, and back pain that limits his ability to engage in daily activities. (Tr. 723-27). For instance, Plaintiff stated that he is able to bathe himself but requires the assistance of his wife and daughter to wash his feet. (Tr. 725). Plaintiff further states that while he experiences pain every day, roughly every third day his pain reaches the point where he doesn't want to communicate with others. (Tr. 738). Most nights, Plaintiff is able to get through the night but often experiences interruptions in his sleep due to the pain. (Tr. 739). When Plaintiff sits for long periods of time, his legs begin to tingle and become sore. (Tr. 723).

Plaintiff testified to treating his conditions with the following medications on a daily basis: Gabapentin (600 milligrams, 3x each day), Clonidine (0.2 milligrams, 1x each day), Atorvastatin (20 milligrams, 1x each day), Lisinopril (20-25 milligrams, 1x each day), and lidocaine patches as needed. (Tr. 723, 539, 1018). Plaintiff also noted that he has received multiple injections – or "blocks" – from Dr. Perry Savage, his primary back doctor, to treat his pain. (Tr. 740, 743). Plaintiff stated that the blocks provide temporary relief but eventually wear off over time. (Tr. 743).

Plaintiff has undergone two significant surgeries: a hip replacement in 2009 and a neck fusion in 2014. (Tr. 355, 465-67). In 2013, Plaintiff sought treatment for neck, hip, and back pain at OrthoAlabama Spine & Sports with Dr. Mallempati. (Tr. 556-58). Following that initial appointment, Dr. Mallempati ordered an MRI to further evaluate Plaintiff's injuries. (Tr. 558). The MRI, conducted on July 8, 2013, revealed bulging discs on the left side at L4-5 and L5-SI. (Tr. 562, 555). Dr. Mallempati concluded that Plaintiff's muscle weakness, atrophy, numbness, and tingling were a result of nerve root compression at the C spine level.

Simultaneously, Plaintiff sought treatment at the University of Alabama at Birmingham's ("UAB") neurosurgery clinic. (Tr. 456). Plaintiff elected to undergo neck surgery and the neck fusion operation was completed on May 5, 2014. (Tr. 465-67). Plaintiff continued to see providers at the neurosurgery clinic for follow-up appointments. (Tr. 434-38). Thereafter, Plaintiff returned to Dr. Mallempati on March 24, 2015, this time complaining of lower back pain. On March 27, 2015, Plaintiff began receiving epidural blocks to help treat his pain (Tr. 566). At a follow-up appointment on April 17, 2015, Dr. Mallempati referred Plaintiff to Dr. Charles Carnel for pain management. (Tr. 568). According to Dr. Mallempati, Dr. Carnel prescribed gabapentin to help treat Plaintiff's pain. (Tr. 570). However, the gabapentin caused sedation, so Plaintiff stopped taking it. (Tr. 574). At this point, on August 18, 2015, Dr. Mallempati suggested that Plaintiff proceed with a conservative pain management treatment plan, including trigger point injections, which he administered to Plaintiff. (Tr. 575-78). On October 13, 2015, Plaintiff returned to Dr. Mallempati, again complaining of back pain. (Tr. 579). Dr Mallampati administered a lumbar epidural injection. (Tr. 580). Plaintiff continued to treat his pain with routine epidural blocks and pain medications, including gabapentin and Tylenol No. 3. (Tr. 585-87). Plaintiff consistently reported that the epidurals would provide partial relief for a period of a few weeks (Tr. 589, 591, 594, 596).

At a follow up appointment on September 12, 2016, Dr. Carnel indicated that Plaintiff's gait was painful and slow. (Tr. 595). He also noted that a previous MRI had revealed the following findings with regard to Plaintiff's condition: L4-5 disk bulging, bilateral degenerative joint disease, central canal stenosis, left neuroforaminal stenosis, L5-S1 disk bulging, left paracentral disk bulging impinging L5 and S1 nerve root, and facet degenerative disease. (Tr. 594). Plaintiff remained on the same medication regimen to treat his pain. (Tr. 595). At subsequent appointments,

Dr. Carnel noted that Plaintiff was seeing improvement in his quality of life and generally doing well with the prescribed medications. (Tr. 597, 599).

On November 18, 2016, another MRI was performed to assess Plaintiff's condition, and it revealed the following relevant findings: "The C2-C3 level shows a small central disc bulge with patent canal and neuroforamina," "the C3-C4 level shows a broad-based irregular disc osteophyte complex with mild to moderate canal stenosis and mild to moderate bilateral proximal neural foraminal stenosis more so to the left," "the C4-C5 level shows metallic artifact with postoperative change," "the C5-C6 level shows a[n] osteophyte with metallic artifact from fusion," "the C6-C7 level shows fusion with metallic artifact and findings suggestive of osteophyte at this level," and "the C7-T1 level shows a broad-based disc bulge with moderate bilateral proximal neural foraminal stenosis worse on the right." (Tr. 402).

On December 21, 2016, Plaintiff returned to UAB to see Dr. Mamerhi Okor, who had previously referred him for neck surgery. (Tr. 415-18). He recommended continued lumbar epidural injections to treat Plaintiff's symptoms while also assessing a surgical option. (Tr. 418). On February 27, 2017, Plaintiff returned to Dr. Okor for a follow-up appointment and positively stated that he had not felt the current level of relief given to him from the injection in years. (Tr. 411). He reported similar relief at his follow-up appointment on April 10, 2017, but noted that he could feel his pain slowly coming back. (Tr. 397). On June 21, 2017, Dr. Okor discharged Plaintiff because there was no surgical therapy planned as part of his treatment. (Tr. 390). After his discharge, Plaintiff returned to see Dr. Carnel on August 14, 2017, and stated that he was able to engage in more activity when taking his medication. (Tr. 605). For instance, Plaintiff noted that he was able to mow his grass. (*Id.*).

On June 28, 2019, Plaintiff began seeing Dr. Perry Savage, another provider at OrthoAlabama Spine and Sports. (Tr. 610). Plaintiff indicated that his symptoms included range

5

of motion limitation, difficulty walking, sleep disturbances, and catching/locking. (*Id.*). Plaintiff noted that these symptoms had become worse since the onset of his injury. (*Id.*). Plaintiff rated his pain level a 10/10 at this visit. (*Id.*). At a follow-up appointment on July 5, 2019, Plaintiff again rated his pain level at a 10/10 with no changes to his symptoms. (Tr. 613). At that appointment, Plaintiff received a 30 mg injection of Bethamethasone. (Tr. 612). Plaintiff underwent another MRI on July 8, 2019 that found disc extrusions at the L4-5 and L5-S1 levels. (Tr. 1047). Specifically, at L4-5, the MRI revealed "a broad-based central disc extrusion producing compression of the thecal sac." (Tr. 1046). At L5-S1, the MRI revealed "a large central disc extrusion with disc material extending down along the dorsal aspect of the S1 vertebral body over a distance of about 1.2 cm." (*Id.*).

On October 21, 2019, Dr. Thomas Amason conducted an examination of Plaintiff's medical records in connection with his then-pending application for disability benefits. (Tr. 85-90). As Plaintiff notes in his brief, Dr. Amason conducted a review of some of Plaintiff's medical records but did not list the 2017 MRI as one of the records reviewed. (Doc. # 8 at 10; Tr. 85). Dr. Amason determined that Plaintiff suffered from the impairments of degenerative disc disease, dysfunction of the major joints, and obesity. (Tr. 86). Based on these impairments, Dr. Amason concluded that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of four hours, sit for about six hours in an eight-hour work day, and was unlimited in his ability to push/pull other than his limitation in lifting/carrying. (Tr. 87). Dr. Amason further concluded that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ladders/ropes/scaffolds. (Tr. 88). Dr. Amason opined that the Residual Functional Capacity ("RFC") shown by Plaintiff's medical records should be sustainable for an 8-hour workday. (Tr.

89). This was the last examination of Plaintiff in his records before his last date insured (December 31, 2019).

On January 17, 2020, in connection with Plaintiff's request for reconsideration, Nurse Practitioner ("NP") Cassandra Frieson conducted a disability consultative examination. (Tr. 531-35). Regarding his symptoms, Plaintiff reported to NP Frieson that he had ongoing pain in his lower back that radiates down his legs and that nothing makes the pain better. (Tr. 531). He rated his pain level a 6/10 and noted that the pain was dull and achy when stationary, but sharp and stabbing when he moves. (*Id.*). In her notes, NP Frieson stated that "[Plaintiff] reports difficulty in performing some tasks, but can complete other tasks well (see Claimant Questionnaire)." (*Id.*). In a section of her report titled "Medical Source Opinion Statement," NP Frieson concludes that "the physical examination findings are consistent with [Plaintiff]'s stated functional limitations." (Tr. 533).

On March 11, 2020, also in connection with Plaintiff's request for reconsideration, Dr. Robert Haas conducted an examination of Plaintiff's medical records, including NP Frieson's evaluation. (Tr. 118-29). Dr. Haas found that Plaintiff suffered from the following impairments: degenerative disc disease, dysfunction of major joints, obesity, hypertension, hyperlipidemia, and peripheral arterial disease. (Tr. 120). Based on these impairments, Dr. Haas reached the same conclusions as Dr. Amason, with the exception. Dr. Haas found that Plaintiff should never crawl. (Tr. 122). Dr. Haas further concluded that a sedentary RFC with limitations was appropriate for Plaintiff's claim. (Tr. 129).

In between evaluations and while his claim was being litigated, Plaintiff continued to seek treatment. He received a lumbar steroid injection for his pain on February 14, 2020 at an outpatient care center, and continued receiving injections from Dr. Savage. (Tr. 622-35, 1064, 1072, 1076, 1078, 1080, 1082). On February 26, 2020, Plaintiff saw Dr. Jimmie Dotson, a cardiologist, for

continued treatment of his heart conditions. (Tr. 657-60). Dr. Dotson noted that Plaintiff's results were in normal range and he was doing reasonably well from a cardiovascular standpoint. (Tr. 660).

At a series of visits to Dr. Savage between August 2020 and January 2021, Plaintiff rated his pain a 7/10 and did not note any significant change in his symptoms. (Tr. 1057, 1061, 1066). On February 1, 2021, Plaintiff again rated his pain level at a 7/10. (Tr. 1069). He noted that his symptoms were made worse when walking or sitting. (*Id.*). At this visit, Dr. Savage concluded that Plaintiff "is totally and permanently disabled from doing any gainful employment," stating that "[h]e could be easily paralyzed with mild to moderate neck trauma." (Tr. 1071). On March 22, 2021, Plaintiff rated his pain level at an 8/10 and noted that he was having difficulty walking. (Tr. 1073).

At various times throughout his treatment, Plaintiff was presented with the option of surgery to address his symptoms, but he ultimately decided against it. (Tr. 720). On January 25, 2023, Plaintiff visited the Emergency Department of St. Vincent East with hip pain. He stated that he was having severe hip pain that was usually manageable based on his visits to Dr. Savage but was extremely painful and radiating down the right side of his leg. (Tr. 1098). Plaintiff was given pain medicine and discharged. (Tr. 1094).

At the first hearing on September 10, 2020, Plaintiff stated that he was only able to sit in a desk chair for a ten-minute period of time before needing to get up, stretch out, or lay down. (Tr. 43). Plaintiff further stated that he could walk roughly 20 feet before experiencing pain. (Tr. 43-44). Plaintiff also stated that he does not bend over to pick up things but relies on his wife when that is necessary. (Tr. 45). He also has difficulty lifting or carrying anything with resistance, including for instance items from the grocery store. (Tr. 47-48). Plaintiff described his average day as alternating between sitting in a soft chair, sitting in a hard chair, and laying down. (Tr. 49).

At the February 7, 2023 hearing, Plaintiff gave similar testimony. He stated that he can dress himself but requires assistance putting on his shoes and socks. (Tr. 724). Plaintiff additionally stated that he can go to stores close to his home if needed but he is unable to cook a simple meal beyond heating food in the microwave or making himself a sandwich. (Tr. 725). Likewise, he does not perform chores around the home. (Tr. 726).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ

9

determines whether the claimant has the RFC to perform past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id*. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. *Id*. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. *Id*. §§ 404.1520(g), 404.1560(c).

The ALJ found that Plaintiff has not engaged in substantial gainful employment since his alleged onset date (July 24, 2018). (Tr. 687). Based on the medical evidence presented, the ALJ concluded that Plaintiff had the following severe impairments since his alleged onset date: obesity, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left hip, and peripheral arterial occlusive disease. (Tr. 687). Nevertheless, the ALJ determined that, through December 31, 2019, the last date insured, none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1. (Tr. 688).

After consideration of the entire record, including the reports of Drs. Savage, Amason, and Haas, and NP Frieson, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) subject to the following limitations: Plaintiff can never climb ladders ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he can frequently reach bilaterally; he can occasionally be exposed to extreme cold and extreme heat; he cannot be exposed to excessive vibration or workplace hazards such as moving, mechanical parts and high, exposed places. (Tr. 689-90). In making this determination, the ALJ found that Plaintiff's

descriptions of the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective medical evidence. (Tr. 690-93).

Based on this RFC, the ALJ concluded that Plaintiff is unable to perform any of his past relevant work. (Tr. 693). The ALJ further noted that, for the purposes of a disability determination, a borderline age situation exists in this case. (Tr. 693). At the alleged onset date, Plaintiff was a younger individual age 45-49. (Tr. 693). However, prior to the issuance of the ALJ's decision, Plaintiff came within six months of his 50th birthday. (Tr. 693). The ALJ found that because a borderline age situation exists, use of the next higher age category is warranted. (Tr. 693). This finding was based on the adverse impact of all factors on Plaintiff's ability to adjust to work – such as the heavy nature of his past relevant work and his lack of transferrable skills. (Tr. 693-94).

The ALJ found that prior to May 1, 2023 – six months before Plaintiff's 50th birthday – transferability of job skills was immaterial to any determination of disability because the Medical-Vocational Rules support a finding of "not disabled" whether or not Plaintiff has transferable skills. (Tr. 694). However, the ALJ determined that beginning May 1, 2023, due to a change in his age category, Plaintiff has been unable to transfer job skills to other occupations. (Tr. 694).

Similarly, the ALJ found that before May 1, 2023, jobs existed in significant numbers in the national economy that Plaintiff could have performed, considering his age, education, work experience, and RFC. (Tr. 694-95). However, beginning May 1, 2023, Medical-Vocational Rule 201.14 dictates a finding of "disabled" regardless of whether Plaintiff had the RFC for full sedentary work. (Tr. 695). As such, the ALJ found that beginning May 1, 2023, there were no jobs existing in significant numbers in the national economy that Plaintiff could perform considering his age, education, work experience, and RFC. (Tr. 695).

The ALJ concluded by finding that Plaintiff was not disabled prior to May 1, 2023, but became disabled on that date and is expected to continue to be disabled for twelve months past the

onset date. (Tr. 695). Further, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, at any time through December 31, 2019 (his last date insured). (Tr. 695). The practical impact of this decision is that Plaintiff was eligible for SSI benefits if he met the non disability requirements but he was not eligible for disability or disability insurance benefits. (Tr. 696).

## III.    Plaintiff's Argument for Remand

Plaintiff appeals the ALJ's denial of disability insurance benefits. He presents three arguments for remand. First, Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Savage that he was limited to less than sedentary work. (Doc. # 8 at 2). Second, he asserts that the ALJ erred in stating that NP Frieson "did not provide [for] any functional limitations." (*Id.*). Plaintiff claims that while NP Frieson did not specifically list functional limitations, her statement that her findings "were consistent with [Plaintiff]'s stated functional limitations" constituted a medical opinion that the ALJ should have considered. (*Id.* at 2-3). Finally, Plaintiff contends that the ALJ failed to provide appropriate rationale for discounting his subjective testimony concerning his own pain. (*Id.* at 3).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

Plaintiff takes issue with the ALJ's consideration of three pieces of evidence in making a determination of his RFC: Dr. Savage's opinion, NP Frieson's report, and Plaintiff's own testimony. After careful review, the court concludes that the ALJ's determination that Plaintiff became disabled on May 1, 2023 was supported by substantial evidence in the record and is due to be affirmed.

### A.    Dr. Savage's Opinion

Plaintiff first argues that the ALJ improperly substituted his judgment for the judgment of Plaintiff's treating physician, Dr. Savage. (Doc. # 8 at 8). Particularly, Plaintiff argues that the ALJ erred in using the opinions of Drs. Amason and Haas, who Plaintiff dubs "non-examining physicians," to reject the opinion of Dr. Savage. (*Id.* at 10). The opinion that Plaintiff alleges the ALJ discredited is Dr. Savage's statement on February 1, 2021, which stated that Plaintiff "is totally and permanently disabled from doing any gainful employment." (Tr. 1071).

As a threshold matter, a claimant's RFC is a judgment reserved to the ALJ. *See* 20 C.F.R. § 404.1546(c). The ALJ's determination is not a medical diagnosis but rather a legal determination based on standards set forth in the regulations. 20 C.F.R. § 404.1545. Furthermore, the Eleventh Circuit has held that a treating physician's opinion that a claimant is "fully disabled" is not a medical opinion. *Williams v. Acting Comm'r of Soc. Sec.*, 649 Fed. Appx. 1000, 1002 (11th Cir. 2016) (holding that a treating physician's opinion that claimant was "fully disabled" was not a medical opinion but rather a conclusory legal judgment on issues reserved to the Commissioner). Likewise, the regulations provide that third-party statements on issues reserved to the Commissioner (such as a determination of a claimant's ability to work) are neither valuable nor persuasive to the ALJ's determination. 20 C.F.R. § 404.1520b(c)(3); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").

As to medical opinions, the regulations dictate that while the ALJ must consider relevant medical evidence, he will not give any specific evidentiary weight or deference to a particular opinion. 20 C.F.R. § 404.1520c(a). This remains the case when evaluating medical opinions of a treating physician or prior administrative medical findings. *Id.* In determining whether he finds certain opinions to be persuasive, the ALJ must evaluate them for supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).[3]

Here, the ALJ stated the following regarding his consideration of Dr. Savage's opinion:

I have considered the opinion of Dr. Perry Savage, [Plaintiff]'s treating physician who opined [Plaintiff] was disabled, which is an opinion reserved to the Commissioner and has not been evaluated for persuasiveness; I have, however,

---

[3] Other factors to be considered are the relationship with the claimant, specialization, and other factors that tend to support or contradict an opinion. 20 C.F.R. § 404.1520c(c). The regulations dictate that the ALJ is only required to consider supportability and consistency but may evaluate all the factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ finds that there are two identical medical findings about the same issue that are both equally well-supported and consistent with the record but are not exactly the same, the ALJ will consider the additional factors.

considered the treating records and his findings when limiting [Plaintiff] to less
than the full range of sedentary work. The analysis at both the initial and
reconsideration levels is adequately explained and supported with objective
evidence. Any minor discrepancies with the recommended residual functional
capacity are due to my own independent review of evidence that has been
developed since the initial determination, along with evidence adduced at the
hearing.

(Tr. 693) (citations omitted). The ALJ was correct in noting that Dr. Savage's opinion that Plaintiff

is disabled is not a medical opinion under the regulations and therefore does not need to be

evaluated for persuasiveness. *See Williams*, 649 Fed. Appx. at 1002. Moreover, the ALJ states that

he did consider the remainder of Dr. Savage's treating records and findings when reaching his

conclusion as to Plaintiff's RFC. (Tr. 693). It appears that Plaintiff's primary complaint is not that

the ALJ failed to consider Dr. Savage's opinion but rather that the ALJ did not give Dr. Savage's

opinion controlling authority. But this argument ignores that if the ALJ were – as Plaintiff suggests

– to give controlling authority to Dr. Savage's opinion, he would be in violation of the clear dictates

of 20 C.F.R. § 404.1520c(a).

Furthermore, the court finds that the ALJ's ultimate determination was supported by

substantial evidence in the record. Notably, the ALJ ultimately found that Plaintiff was disabled

as of May 1, 2023. (Tr. 695).  In reaching this conclusion, the ALJ considered the opinions of Drs.

Savage, Amason, and Haas, and NP Frieson. (Tr. 692-93). The ALJ's conclusion that Plaintiff was

disabled as of May 1, 2023 (and only capable of limited sedentary work before then) reflected a

lower RFC than what Drs. Amason and Haas recommended and a higher RFC than Dr. Savage

recommended. The ALJ stated that while he found reports of Drs. Amason and Haas to be

persuasive, he "further limited [Plaintiff] to sedentary work based on evidence received at the

hearing level." (Tr. 692). He additionally stated that the discrepancy between Dr. Savage's

recommendation and his determination was based on his "own independent review of evidence

that has been developed since the initial determination, along with evidence adduced at the hearing." (Tr. 693).

The court need only decide whether the ALJ's determination is supported by substantial evidence. *Martin*, 894 F.2d at 1529. This court may not re-weigh the evidence when reviewing the ALJ's determination. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (court may not "decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner."). The court concludes that there is substantial evidence in the record to support the ALJ's determination that Plaintiff was capable of sedentary work with limitations prior to the May 1, 2023 finding of disability.

### B.    NP Frieson's Report

Plaintiff next argues that the ALJ improperly failed to consider the findings of NP Frieson in making his decision. (Doc. # 8 at 13-15). The "finding" of NP Frieson that is at issue is her statement that "the physical examination findings are consistent with [Plaintiff]'s stated functional limitations." (Tr. 533). In evaluating NP Frieson's report, the ALJ states in full:

> I have considered the evaluation by [NP] Frieson in determining [Plaintiff]'s residual functional capacity but note that she did not provide an opinion to be evaluated for persuasiveness, but merely noted that the 'physical examination findings are consistent with [Plaintiff]'s stated functional limitations.' This statement is beyond the scope of the examination and does not constitute an opinion under current regulations, however notwithstanding the indeterminate nature of this statement, I have considered the entire report along with all other available evidence in determining [Plaintiff]'s residual functional capacity.

(Tr. 693).

Plaintiff argues that when NP Frieson refers to "[Plaintiff]'s stated functional limitations," she is referring to the Function Report that Plaintiff provided to the Social Security Administration in connection with his initial application. (Doc. # 8 at 14; Tr. 533). Plaintiff contends that NP Frieson's findings constituted a medical opinion and that the ALJ was thus required to state with particularity the weight given to her opinion. (*Id.*). Plaintiff further asserts that the ALJ

mischaracterized NP Frieson's findings and, in doing so, did not appropriately consider his limitations. (*Id.*). The Commissioner defends the ALJ's decision by arguing that NP Frieson's statement did not constitute a medical opinion under the regulations and that it was not clear what NP Frieson was referring to when discussing Plaintiff's stated functional limitations. (Doc. # 9 at 12-13).

> Under the regulations applicable here:
>
> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities…:
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2) (references omitted).[4]

NP Frieson did not opine on what Plaintiff is able to do despite his impairments. Nor did she place limitations or restrictions on any of the capabilities defined in the regulations. Rather, she merely stated that her findings are consistent with Plaintiff's stated functional limitations. However, it is not clear what Plaintiff's stated functional limitations were. Plaintiff and the Commissioner dispute whether NP Frieson had access to Plaintiff's Function Report, which was completed as part of his initial application for benefits. (Docs. # 8 at 14; 9 at 12-13). In relevant part, Plaintiff's Function Report states that he can lift 5 pounds, stand for 20 minutes, and walk for

---

[4] As the Commissioner notes, Plaintiff cited to 20 C.F.R. § 404.1527(a)(2). However, because Plaintiff applied for benefits in 2019, the pertinent regulation is 20 C.F.R. § 404.1513(a)(2).

5 minutes or less (with breaks every 2 minutes). (Tr. 296). But nowhere in NP Frieson's report does she directly refer to these limitations. Regarding functionality, NP Frieson states (quite vaguely), "[c]laimant reports difficulty in performing some tasks, but can complete other tasks well (*see* Claimant Questionnaire)." (Tr. 531). Likewise, as the Commissioner noted, it is unclear what specific documents NP Frieson reviewed prior to her assessment of Plaintiff. In her assessment, she stated that she reviewed "the medical records submitted by the AL DDS." (*Id.*). She did not, however, refer specifically to the Function Report. In her assessment, NP Frieson references the "Claimant Questionnaire." (Tr. 531). However, it is unclear what document she is referring to. For instance, she could be referring to Plaintiff's Pain Questionnaire (Tr. 288-89) provided to the Commissioner, in which Plaintiff describes his pain level associated with doing certain activities. Even if this were the case, neither the contents of the questionnaire nor her endorsement of Plaintiff's claims would constitute a medical opinion pursuant to 20 C.F.R. § 404.1513(a)(2). And, in any event, this does not sufficiently explain NP Frieson's understanding of Plaintiff's stated limitations and certainly does not meet the requirements of 20 C.F.R. § 404.1513(a)(2). *See also Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, *4 (M.D. Fla. Mar. 31, 2022) (finding that a letter that did not "assess the extent to which [Plaintiff] can perform any particular function in a work setting" did not constitute a "medical opinion").

Therefore, the ALJ did not err in his determination that NP Frieson's vague statement endorsing Plaintiff's stated functional limitations did not constitute a medical opinion. Further, the ALJ stated that he considered the entirety of NP Frieson's report when making a determination as to Plaintiff's RFC, even in light of the fact that NP Frieson's statement did not constitute a medical opinion. Because record evidence supports the ALJ's findings and the ALJ acted according to the regulations and appropriately considered NP Frieson's report, the court concludes that the ALJ's decision is supported by substantial evidence.

### C.    Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ erred by improperly discounting Plaintiff's own testimony about his pain. (Doc. # 8 at 15-20). More specifically, Plaintiff argues that his testimony regarding his functionality was supported by the record and the ALJ's finding that "the extreme limitation described by [Plaintiff] is inconsistent with and not supported by the objective medical evidence and other evidence contained in this claim" was error. (Tr. 692).

When a claimant seeks to establish disability based on subjective pain testimony and symptoms, the Eleventh Circuit's pain standard applies. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Id.* (citing *Landry v. Heckler*, 782 F.3d 1551, 1553 (11th Cir. 1986)); *see Jones v. Comm'r, Soc. Sec. Admin.*, No. 22-13659, 2023 WL 7294879 (11th Cir. Nov. 6, 2023) (unreported); *see also* 20 C.F.R. § 404.1529. Thus, a claimant's testimony about his pain does not alone suffice to establish a disability. *See* 20 C.F.R. § 404.1529(a).

In appropriate cases, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms" in order to determine how those symptoms "limit [the claimant's] capacity for work." *Id.* § 404.1529(c)(1). In evaluating the intensity and persistence of the alleged pain, the ALJ will consider objective medical evidence but not discount the claimant's subjective statements. *See id.* § 404.1529(c)(2). The ALJ also considers nonmedical evidence presented in support of alleged pain symptoms because pain is "subjective and difficult to quantify." *Id.* § 404.1529(c)(3). But the ALJ evaluates the evidence, including the claimant's statements about pain, "in relation to the objective medical evidence and other evidence" in its entirety and considers

"whether there are any inconsistencies" or any "conflicts between [the claimant's] statements and the rest of the evidence." *Id.* § 404.1529(c)(4).

Here, the ALJ acknowledged Plaintiff's severe impairments, including obesity, peripheral arterial occlusive disease, degenerative joint disease of the hip, and degenerative disc disease of the cervical and lumbar spine. (Tr. 691).[5] In doing so, he determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 690). The ALJ then evaluated the "intensity, persistence, and limiting effects of the symptoms." (Tr. 690). The ALJ correctly considered both objective medical evidence and nonmedical evidence and articulated his reasoning for why he found evidence persuasive or unpersuasive. (Tr. 690-93); *see* 20 C.F.R. § 404.1529(c)(4). Based on his findings and consideration of the evidence, the ALJ found that "the extreme limitation described by [Plaintiff] is inconsistent with and not supported by the objective medical evidence and other evidence contained in this claim." (Tr. 692).  In making this determination, the ALJ properly recognized, under SSR 16-3p,[6] that some individuals may experience symptoms differently and have different limitations resulting from the same medical impairments. (Tr. 692). Because the ALJ fully considered the record in his evaluation of the "intensity and persistence" of Plaintiff's symptoms and whether they "limit [his] capacity for work," substantial evidence supports the ALJ's determination that Plaintiff was not disabled prior to May 1, 2023. *See* 20 C.F.R. § 404.1529(c)(1).

---

[5] Though not found to be severe impairments, the ALJ also acknowledged Plaintiff's hypertension and hyperlipidemia. (Tr. 690).

[6] Plaintiff contends that the ALJ's determination was in part based on his "credibility." (Doc. # 8 at 15). However, the ALJ did not make a determination as to Plaintiff's credibility. In fact, doing so would violate SSR 16-3p, which removes the term "credibility" from the Social Security Administration's subregulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *See* 82 Fed. Reg. 49,462 (Oct. 25, 2017).

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff only became disabled on May 1, 2023 is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this September 5, 2025.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE